<u>**NOT FOR PUBLICATION**</u>

> **FILED**
> JAMES J. WALDRON, CLERK
>
> **APRIL 10, 2006**
>
> U.S. BANKRUPTCY COURT
> NEWARK, N.J.
> BY: s/ Ronnie Plasner, DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re: **PATRICK GEORGE ANDREWS**, Debtor. | Case No.: 03-47129 (DHS) <br> Adversary No. 04-01236 (DHS) <br> Judge: Donald H. Steckroth, U.S.B.J. |
| **MARGARET ANDREWS**, Plaintiff, <br> v. <br> **PATRICK GEORGE ANDREWS**, Defendant. | |

### **OPINION**

**APPEARANCES:**

Mrs. Margaret Andrews
68 Merritt Avenue
Bergenfield, NJ 07621
*Plaintiff, Pro Se*

Arthur C. Linderman, Esq.
25 East Salem Street
Hackensack, NJ 07601-7427
*Counsel for Defendant*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is the trial of a complaint objecting to the discharge of debt owed to the Plaintiff, Margaret Andrews ("Plaintiff"), against her former husband, the Debtor, Patrick G. Andrews ("Debtor").

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

On January 23, 2002, a final judgment of divorce was granted to the Plaintiff by the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-2801-01 ("Judgment of Divorce"). Pursuant to the Judgment of Divorce, the Debtor was to pay the Plaintiff the amount of $350.00 per week as permanent alimony and $73.00 per week as child support, together with responsibility for their daughter's credit card debt, college loan expenses, and medical insurance. In addition, the Debtor was to bring current the mortgage on the marital home located in Bergenfield, New Jersey, and transfer full control, title, and ownership to the Plaintiff, with each party having a 50% interest in the marital home. The Debtor was to receive a lien against the marital home in an amount equal to 50% of the net equity, less amounts due and owing to the Plaintiff under the Judgment of Divorce. Significant with respect to the marital residence is a provision requiring the Debtor to pay the approximate balance of $21,000.00 for the Adventa Home Line of Credit ("Line of Credit") and the Debtor was to indemnify and hold Plaintiff harmless from the debt.

Subsequent to the entry of the Judgment of Divorce, the Debtor failed to make payments on the Line of Credit which was secured by a second mortgage on the former marital home and, as a result, foreclosure proceedings were initiated against the residence in which Plaintiff resides. To stop the

2

foreclosure, the Plaintiff borrowed $30,005.26 from personal friends in order to pay off the Line of Credit which the Debtor had extended from the original $21,000.00 at the time of the Judgment of Divorce (hereinafter the pay-off sum will be referred to as $30,000.00).  Thereafter, on December 19, 2002, an order compelling the Debtor to pay Plaintiff approximately $30,000.00 for failure to comply with the Judgment of Divorce was entered by the Superior Court of New Jersey to reflect the Plaintiff's satisfaction of the Line of Credit.

On November 14, 2003, the Debtor filed a Voluntary Petition under Chapter 7 of the United States Bankruptcy Code.  On Schedule B of his bankruptcy petition, the Debtor listed the Plaintiff as a creditor holding an unsecured priority claim in the amount of $30,000.00, and scheduled the Line of Credit debt as an "equitable distribution debt."

On February 4, 2004, the Plaintiff filed an adversary proceeding objecting to the discharge of the Line of Credit debt against the Debtor.  In her complaint, the Plaintiff alleges that the money owed to her by the Debtor for the Line of Credit is for alimony, maintenance, or support of the Plaintiff and is, therefore, not dischargeable pursuant to 11 U.S.C. § 523(a)(5).[1]  Alternatively, the complaint further alleges that the Debtor's responsibility to pay the Line of Credit is not dischargeable under 11 U.S.C. § 523(a)(15), contending the Debtor has the ability to pay the debt and discharge would result in a benefit to the Debtor that outweighs the detriment to the Plaintiff.  The Debtor opposes the requested relief and maintains that the debt owed to the Plaintiff for the Line of Credit should be treated as an equitable distribution debt and not as alimony, maintenance, or support, since it is not specifically designated as such in the Judgment of

---

[1] The Complaint was filed by counsel representing Plaintiff.  Soon thereafter, counsel died and Plaintiff proceeded pro se with this matter through trial.

3

Divorce. Moreover, the Debtor asserts that the Plaintiff has $7,000.00 more per year in income than the Debtor and, therefore, the debt is subject to discharge pursuant to 11 U.S.C. § 523(a)(15)(A) and (B).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334(b), 151, and 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(B) and (I). Venue is proper under 28 U.S.C. § 1408(a). The following shall constitute the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

The relevant testimony from the trial before the Court can be summarized as follows:

### **Testimony by the Plaintiff**

The Plaintiff testified that the Debtor vacated the marital home in April of 2000 and deserted her and their children with no means of support for several weeks. Thereafter, the Debtor provided money for food for the family and told the Plaintiff that he would pay the ongoing household expenses. The Plaintiff stated that the Debtor paid the expenses until September of 2001, but by December of that year, she learned her house was being foreclosed upon and the utilities bills were unpaid. At that point, the Plaintiff had no recourse but to pay the ongoing bills herself and had the utilities bills transferred to accounts in her name. It was also during this period that the Plaintiff borrowed $30,000.00 from her friends in order to satisfy the Line of Credit and stop the foreclosure proceedings on her home.

The Plaintiff further testified that she is currently carrying a mortgage in the amount of $155,000.00 on her home in addition to the $30,000.00 that she owes to her friends. The $155,000.00 mortgage is held solely by the Plaintiff, since she refinanced the house after the Judgment of Divorce in order to pay off the previous mortgage held by her husband and to gain sole ownership of the property. The Plaintiff stated that the residence is valued at $235,000.00 according to a reassessment recently performed by the municipality.

4

On cross-examination, the Plaintiff acknowledged that the Debtor was out of work from approximately April of 2001 until October of 2001, and she understood that he used his payroll savings account to continue paying the household expenses. When asked to examine a statement of that account dated March of 2001, the Plaintiff identified the balance of the account as $3,053.65. She also acknowledged that the Debtor paid alimony and support costs together with other payments from the Judgment of Divorce by drawing down on the Line of Credit and increasing the debt from $21,000.00 to $30,000.00. Finally, the Plaintiff stated that she is currently employed by her local church where she earns between $1,100.00 and $1,200.00 per month and that her mortgage and monthly bills are all current.

### **Testimony by the Debtor**

The Debtor testified that he left the marital home around April of 2000 at which time he was employed by a local Shop Rite. He explained that he was laid off in April of 2001 for approximately six months during the pendency of an arbitration. During the period of unemployment, the Debtor accessed and used funds from the Line of Credit in order to pay the mortgage and expenses for the marital home. The Debtor underwent a heart bypass operation in October of 2001 and requires medication for his condition. The Debtor stated that he currently earns $1,129.25 per week, from which $618.30 is deducted for taxes, union dues and alimony to the Plaintiff. Therefore, his take-home pay is $510.93 per week, or approximately $2,197.00 per month. The Debtor listed his monthly expenses, which he had prepared in the form of a written budget, as follows:

5

|  |  |
|---|---|
| $ 804.00 | - Rent |
| $ 285.00 | - Car lease |
| $ 94.00 | - Car insurance |
| $ 258.00 | - Fuel |
| $ 430.00 | - Food |
| $ 20.00 | - Gas/Electric |
| $ 20.00 | - Telephone |
| $ 80.00 | - Prescription medication |
| $ 50.00 | - Attorney's fees to the Plaintiff's divorce attorney |
| TOTAL  $ 2,041.00 | |

According to these figures from the Debtor, which appear reasonable, he is left with $156.00 per month of disposable income after expenses. He noted that he works overtime whenever possible.

Upon questioning by the Court, the Debtor explained that he used the majority of the Line of Credit to pay the bills and expenses for the Plaintiff's home and support and was essentially "borrowing from Peter to pay Paul." This is the explanation for how the Line of Credit debt grew from the $21,000.00 at the time of the Judgment of Divorce to the $30,000.00 debt at the time of foreclosure.

## LEGAL ANALYSIS

### Dischargeability Under 11 U.S.C. § 523(a)(5)

The initial issue before the Court is whether the $30,000.00 debt listed on the Debtor's petition and owed to the Plaintiff is in the nature of alimony, maintenance, or support within the meaning of 11 U.S.C. § 523(a)(5)(B). Section 523(a)(5) provides:

> (a) a discharge under section 727, 1141, 1228 (a), 1228 (b), or 1328 (b) of this title does not discharge an individual debtor from any debt—
>
> (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance

6

> with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that—
>
>> (A) such debt is assigned to another entity, voluntarily, by operation of law, or otherwise (other than debts assigned pursuant to section 408(a)(3) of the Social Security Act, or any such debt which has been assigned to the Federal Government or to a State or any political subdivision of such State); or
>>
>> (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support;

11 U.S.C. § 523(a)(5). Under § 523(a)(5), debts resulting from divorce which are classified as alimony, maintenance or support are not dischargeable as are those liabilities actually in the nature of alimony, maintenance, or support. See Maldonado v. Sanabria (In re Sanabria), 275 B.R. 204, 206 (Bankr. D.N.J. 2002).

The Debtor argues that § 523(a)(5) is not applicable in the instant matter because his obligation to pay the Line of Credit was not designated as alimony, maintenance or support in the Judgment of Divorce. That position is overly simplistic and not conclusive. Section 523(a)(5)(B) explicitly provides that the designation of debts as alimony, maintenance or support is not dispositive of whether such debts will actually be considered as alimony, maintenance or support for the purposes of nondischargeability. Gianakas v. Gianakas (In re Gianakas), 917 F.2d 759, 762 (3d Cir. 1990). Courts are required to look beyond the labels offered by settlement agreements or final judgments in order to determine the true nature of an obligation. Id. Likewise, a debt which is not considered to be alimony or support under applicable

state law may still be deemed in the nature of alimony, maintenance or support under § 523(a)(5). Id. (quoting Yeates v. Yeates (In re Yeates), 807 F.2d 878 (10th Cir. 1986)).

Whether an obligation should be considered alimony, maintenance, or support for the purposes of § 523(a)(5) is a matter of federal law, and not state law. Id. at 762; In re Sanabria, 275 B.R. at 207. "The inquiry of the bankruptcy court should be limited to the nature of the obligation at the time it was undertaken." In re Gianakas, 917 F.2d at 763. In In re Gianakas, the Third Circuit held that such a determination depends on a finding as to the intent of the parties at the time of the settlement agreement or divorce decree. Id. In attempting to find the intent of the parties, courts should examine three principal indicators. Id. The first indicator is "the language and substance of the agreement in the context of surrounding circumstances." Id. Next, the court should examine the parties' "financial circumstances at the time of the settlement." Id. Finally, the court should look at "the function served by the obligation at the time of the divorce of settlement." Id.

Under the Judgment of Divorce, the Debtor was to pay the Plaintiff $350.00 per week as permanent alimony and $73.00 per week as child support, together with responsibility for the daughter's credit card debt, college loan expenses, and medical insurance. The Debtor was to bring current the mortgage from the marital home located in Bergenfield, New Jersey, and transfer full control, title, and ownership to the Plaintiff, with each party having a 50% interest in the marital home. The Debtor was to receive a lien against the marital home in an amount equal to 50% of the net equity, less any amounts due and owing to the Plaintiff under the Judgment of Divorce. Significant with respect to the marital residence

is the provision requiring the Debtor to pay the balance of $21,000.00 for the Line of Credit, and the Debtor was further required to indemnify and hold Plaintiff harmless.

While not designated as alimony, maintenance, or support in the Judgment of Divorce, the Court finds, based on the testimony of the parties, an examination of the financial circumstances at the time of divorce and the function served by the obligation, that it was the intent and purpose of the Judgment of Divorce that the Debtor was to provide the residence and its equity to Plaintiff free from the Line of Credit debt. This was the reason the Debtor was obligated to pay the Line of Credit under the Judgment of Divorce. Thus, the Court finds payment of the Line of Credit to be in the nature of alimony, support, and maintenance for the care of Plaintiff and the unemancipated child of the marriage.

Here, instead of providing the residence to Plaintiff free from the Line of Credit, the Debtor increased the debt from $21,000.00 to $30,000.00 which borrowing, testimony reveals, was undertaken to pay for required alimony, support, and maintenance under the Judgment of Divorce. Thus, the increase from $21,000.00 to $30,000.00 is also in the nature of alimony, maintenance, and support and should not be dischargeable under the Bankruptcy Code. The entire Line of Credit debt in the sum of $30,000.00 is found by this Court to be in the nature of alimony, maintenance, or support for Plaintiff and/or the child of the marriage and thus is non-dischargeable under § 523(a)(5)(B) of the Bankruptcy Code.

## Dischargeability Under 11 U.S.C. § 523(a)(15)

The second issue before the Court is whether the $30,000.00 debt should be exempted from discharge under 11 U.S.C. § 523(a)(15). Since the Court has ruled that the debt in question is non-dischargeable under § 523(a)(5), a determination under § 523(a)(15) is not necessary.

An Order in conformance with this Opinion has been entered by the Court and a copy is attached.

s/ **Donald H. Steckroth**
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: April 10, 2006